Miles N. Clark, Esq.
Nevada Bar No. 13848
LAW OFFICES OF MILES N. CLARK, LLC
5510 S. Fort Apache Rd, Suite 30
Las Vegas, NV 89148-7700
Phone: (702) 856-7430
Fax: (702) 552-2370
Email: miles@milesclarklaw.com

*Attorney for Plaintiffs*,
*Robert Aaron and Marilyn Aaron*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| ROBERT AARON; and MARILYN AARON, <br><br> Plaintiffs, <br> v. <br><br> EQUIFAX INFORMATION SERVICES, LLC; FIRST MERCHANTS BANK, NATIONAL ASSOCIATION, MUNCIE, INDIANA.; and TRANS UNION LLC, <br><br> Defendants. | Civil Action No.: 1:23-cv-02211 <br><br> **COMPLAINT FOR DAMAGES PURSUANT TO THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681, ET SEQ.** <br><br> **JURY TRIAL DEMANDED** |

**JURISDICTION AND VENUE**

1. This Court has federal question jurisdiction because this case arises out of violations of federal law. 15 U.S.C. § 1681 *et seq.*; 28 U.S.C. § 1331.

2. This action arises from violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x ("FCRA").

3. Venue is proper in the United States District Court for the Southern District of Indiana pursuant to 28 U.S.C. § 1391(b) because Plaintiffs are residents of Madison County, State

of Indiana and because Defendants are subject to personal jurisdiction in Madison County, State of Indiana as they conduct business there. Venue is also proper because the conduct giving rise to this action occurred in Indiana. 28 U.S.C. § 1391(b)(2).

**PARTIES**

4. Plaintiffs reassert and realleges all of the preceding paragraphs as if fully stated herein.

5. Plaintiffs Marilyn Aaron ("Mrs. Aaron") and Robert Aaron ("Mr. Aaron") (collectively, "Plaintiffs") are natural persons residing in Madison County, State of Indiana. In addition, Plaintiffs are "consumers" as that term is defined by 15 U.S.C. § 1681a(c).

6. Defendant First Merchants Bank, National Association, Muncie, Indiana. ("Merchants") is a corporation doing business in the State of Indiana. Merchants is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

7. Defendant Equifax Information Services, LLC ("Equifax") regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer credit reports to third parties, and uses interstate commerce to prepare and/or furnish the reports. Equifax is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f), and a nationwide consumer reporting agency under 15 U.S.C. § 1681a(p). Equifax is a corporation which does business in the State of Indiana.

8. Defendant Trans Union LLC ("Trans Union") regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer credit reports to third parties, and uses interstate commerce to prepare and/or furnish the reports. Trans Union is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f), and a

nationwide consumer reporting agency under 15 U.S.C. § 1681a(p). Trans Union is a corporation which does business in the State of Indiana.

9. Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendants.

## FACTUAL ALLEGATIONS – FCRA VIOLATIONS

### *General Allegations, FCRA Liability, and Industry Reporting Guidelines*

10. Plaintiffs reassert and reallege all of the preceding paragraphs as if fully stated herein.

11. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the FCRA to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers.

12. The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting. Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally

follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

13. Furthering the FCRA's goal of accuracy, a consumer may procure a "disclosure" of all information a reporting agency has stored on them under 15 U.S.C. § 1681g to, *inter alia*, review their information for inaccuracies or the presence of identity theft. To the extent Plaintiffs' creditors chose to furnish data to a Consumer Reporting Agency ("CRA"), such data, if accurate, is typically included in Plaintiffs' "consumer files," which the CRA must disclose to a consumer in a clear and accurate manner upon request. 15 U.S.C. § 1681g. Section 1681g disclosures are "consumer reports" under the FCRA when they are acquired for free from nationwide consumer reporting agencies once during any 12-month period. *See* 15 U.S.C. § 1681j(a)(2); *see also id.* at § 1681a(p).

14. The FCRA's protection provisions also permit consumers to dispute the accuracy or completeness any item of information appearing in their file. 15 U.S.C. § 1681i(a). Once notified of a dispute, a CRA must notify the source or furnisher of information, including all relevant information regarding the dispute the CRA received from the consumer. 15 U.S.C. § 1681i(a)(2).

15. Upon receipt of a notice pursuant to 15 U.S.C. § 1681i(a)(2), the furnisher of the information must review all relevant information provided by the CRA, conduct an investigation of the disputed item, and report the results of the investigation back to the CRA. 15 U.S.C. § 1681s-2(b). This reinvestigation must conclude no later than 30 days after submission of a consumer dispute, or 45 days if the dispute pertains to a Section 1681j(a) disclosure. *See* 15 U.S.C. § 1681i.

16. If the furnisher's investigation yields results such that the information disputed by the consumer is incomplete or inaccurate, then the furnisher must report those results to all other CRAs. 15 U.S.C. § 1681s-2(b)(1)(D).

17. If the CRA's reinvestigation (which necessarily includes the furnisher's investigation) finds the disputed information to be inaccurate, incomplete, or unable to be verified, then the CRA must either promptly delete that information or modify it, as appropriate, based on the results of the reinvestigation. 15 U.S.C. § 1681i(a)(5)(A).

18. The CRA must timely notify the disputing consumer regarding the results of the reinvestigation. 15 U.S.C. § 1681i(a)(6). As part of this notice of results of reinvestigation, the CRA must provide a "consumer report." 15 U.S.C. § 1681i(a)(6)(B)(ii).

19. Whenever a reporting agency prepares a consumer report, it must "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). This obligation extends to both Section 1681g reports, 1681i(a)(6) reports, and any other consumer report fitting the definition contained in 15 U.S.C. § 1681a(d), whether sent to a consumer or any other party.

20. CRAs and furnishers also must comply with industry reporting guidelines from the Consumer Data Industry Association ("CDIA"), in the form of industry reporting standards called the "Consumer Reporting Resource Guide" or "Metro 2." The CDIA's standards are composed by only some credit-reporting stakeholders – i.e., reporting agencies and furnishers, but not consumers on whom data is reported – and as such their guidance often favors those parties at the consumers' expense. Nevertheless, courts have

held that a furnisher's failure to follow industry reporting guidelines may establish materially misleading reporting where (1) the furnisher adopts the standard, (2) the furnisher deviated from the standard, and (3) this "deviation might adversely affect credit decisions—in other words, that entit[ies] would have expected [the defendant furnisher] to report in compliance with the [CRRG] guidelines." *Nissou-Rabban v. Capital One Bank (USA)*, No. 15-cv-1675 JLS (DHB), 2016 WL 4508241, at *5 (S.D. Cal. June 6, 2016) (citations and quotations omitted). *See also Wylie v. Experian, LLC*, No. 16-cv-102, 2017 WL 835205, at *5-7 (W.D. Pa. Mar. 2, 2017).

21. On information and belief, Defendants adopted the Metro 2 reporting standards and at all times relevant implemented the Metro 2 format as an integral aspect of their duties under the FCRA to have in place adequate and reasonable policies and procedures to handle investigations of disputed information.

22. Thus, the incomplete and inaccurate reporting provided to Plaintiffs as described herein departed from the credit industry's own reporting standards and was not only inaccurate and incomplete, but also materially misleading under the CDIA's standards as well.

23. This is true both under Metro 2, and if Metro 2 does not apply. For example, even if Metro 2 does not apply, then Defendants were required to report historically accurate information, pursuant to 15 U.S.C. §§ 1681g, 1681e(b), 1681i and 1681s-2(b).

24. The inaccurate reporting provided to Plaintiffs as described herein was not only patently incorrect, but also materially misleading. *See Levine v. JPMorgan Chase & Co.*, 46 F. Supp. 3d 871, 875 (E.D. Wis. 2014).

***Plaintiffs' Bankruptcy Filings***

25. On May 31, 2017, Plaintiffs filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the Southern District of Indiana pursuant to 11 U.S.C. § 701 *et seq*. Plaintiffs' case was assigned Case Number 17-4110-RLM-13 ("Bankruptcy"). BK ECF No. 1.

26. In the bankruptcy petition ("Petition"), Plaintiffs included two obligations for Merchants on Schedule D. *See* BK Doc. 1. These obligations pertained to First and Second mortgages on Plaintiffs' principal residence.

27. In Plaintiffs' controlling plan of reorganization, Plaintiffs agreed to pay the Merchants obligations directly in fully and outside of the bankruptcy. Plaintiffs' payments on the Merchants obligations remain since the termination of the Bankruptcy, and Plaintiffs have made payments thereon. *See* BK Docs. 34, 44.

28. On June 30, 2022, Plaintiff earned a discharge of the Bankruptcy. *See* BK Doc. 68.

***Procuring of Credit Reports and Submission of Disputes***

29. Pursuant to Section 1681g, Plaintiffs requested and, between December 20-24, 16-22, 2022, received consumer reports from reporting agencies Equifax, Experian, and Trans Union. Collectively, these reports are entitled "Initial Credit Reports."

30. On March 6, 2023, written dispute letters for Plaintiffs were sent to Experian, Equifax, and Trans Union regarding disputes of accuracy of the Merchants accounts reported information on the Credit Reports, as specified below. Collectively, these reports are entitled "Disputes."

31. Between March 11-15, 2023, Section 1681i(a)(6) reinvestigation consumer reports were sent to Mrs. Aaron (Trans Union) and Mr. Aaron (Trans Union and Experian), outlining the responses to these disputes (collectively, "Reinvestigations"). There is no record of

31. any reinvestigation from Experian in connection with Mrs. Aaron's dispute, and no record of any reinvestigation from Equifax at all.

32. On March 30, 2023, Plaintiffs procured additional Section 1681g consumer reports from Experian, Equifax, and Trans Union to further determine the accuracy of reported information. Collectively, these documents are referred to as the "Post-Dispute Credit Reports."

33. All of the Credit Reports and the Reinvestigation from Experian were "consumer reports" under 15 U.S.C. § 1681a(d).

34. All iterations of the Credit Reports – Initial, Post-Dispute, or Final – fell under than ambit of 15 U.S.C. § 1681g.

### MERCHANTS FCRA VIOLATIONS – MR. AND MRS. AARON
### 15 U.S.C. § 1681S-2(B)

35. Plaintiffs reassert and reallege all of the preceding paragraphs as if fully stated herein.

36. On Plaintiffs' Initial Credit Reports, Merchants inaccurately reported both of the mortgage obligations.

37. Specifically, for Mr. and Mrs. Aaron, Merchants reported the First and Second Mortgages with a remark of "Bankruptcy Chapter 13" without reporting a balance or payment history (Equifax), "Discharged through Bankruptcy Chapter 13" and "Petition for Chapter 13 bankruptcy" without reporting a balance or payment history after filing of the bankruptcy (Experian), and "Account included in bankruptcy" (Trans Union).

38. All of the above reported information was inaccurate, as it suggested Plaintiffs had discharged their obligations in bankruptcy, when in fact they had continued making their monthly payments directly to Merchants and continued doing so after the bankruptcy discharge. The bankruptcy notations also caused the tradelines to report negatively, while

suppression of Plaintiffs' payment history deprived on their Experian and Equifax reports deprived them of the benefit of this positive payment information. Thus, Merchants' reporting was patently incorrect and materially misleading.

39. In the Experian, Equifax, and Trans Union Disputes, Plaintiffs placed Merchants on notice of the applicable inaccuracies listed above, and requested that the information be corrected.

40. Upon information and belief, upon receiving the applicable Disputes, the CRAs notified Merchants of the applicable disputes based on their mandated statutory duty pursuant to 15 U.S.C. § 1681i(a)(2).

41. Merchants was required to conduct an investigation into this specific account on Plaintiffs' consumer reports pursuant to 15 U.S.C. § 1681s-2(b).

42. A reasonable investigation by Merchants at any point following the Disputes would have indicated Plaintiffs' Merchants accounts were reporting with a status of current, with no bankruptcy indicators, and reporting of Plaintiffs' full payment history.

43. However, there is no indication Merchants ever made all of the corrections Plaintiffs requested. In Mr. Aarons' Experian Reinvestigation, there was no change to the reporting at all. In Mr. Aarons' Trans Union Reinvestigation, it took a "one size fits all" approach and simply deleted one of the Merchants accounts (thus now depriving him of all positive payment history), and did not indicate what corrections, if any, had been made to the second account. In Mrs. Aarons' Trans Union Reinvestigation, Trans Union apparently deleted *both* Merchants accounts. Thus, Merchants' responses to the Disputes were internally inconsistent and completely inaccurate.

44. Plaintiffs' Post-Dispute Credit Reports continued to report the Merchants accounts inaccurately. Specifically, for Mr. and Mrs. Aaron, Experian reported the obligations with a notation of "Discharged through Bankruptcy Chapter 13." Trans Union reported Mr. Aaron's second mortgage account with a derogatory bankruptcy notation and failed to report all positive payment history on his first mortgage; for Mrs. Aaron, by contrast, Trans Union failed to report either account at all. Equifax reported both obligations for Mr. Aaron with derogatory bankruptcy notations and failed to report any payment history; for Mrs. Aaron, Equifax did not repot derogatory bankruptcy information, but failed to report all positive payment history on the account. Therefore, it appears as a result of Plaintiffs' disputes, First Merchants not only reported inaccurate and misleading derogatory information and omitted positive payment information, but further reported the information inconsistently.

45. By failing to fully correct Plaintiffs' information, Merchants ensured Plaintiffs' information would continue to report inaccurately and inconsistently.

46. These failures caused Plaintiffs consumer reports to include materially misleading omissions, which in context created misperceptions about Plaintiff's payment on the debts owed to Merchants.

47. Merchants repeatedly failed to conduct a reasonable investigation, as required by 15 U.S.C. § 1681s-2(b).

48. Merchants failed to review all relevant information provided by Plaintiffs in the Disputes, as required by and in violation of 15 U.S.C. § 1681s-2(b)(1)(B).

49. Due to Merchants' failure to reasonably investigate the Disputes, it further failed to correct and update Plaintiffs' information as required by 15 U.S.C. § 1681s-2(b)(1)(D) and (E),

thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681s-2(b)(1)(C).

50. Merchants continued inaccurate and negative reporting of the debt in light of its knowledge of the actual error was willful. Merchants knew about the disposition of Plaintiffs' accounts because it knew about Plaintiffs' payment history, and failed repeatedly to either correct the inaccuracies or even report the accounts consistently. At minimum, Merchants' conduct was negligent.

51. Plaintiffs have suffered concrete and imminent harm to creditworthiness. The Post-Dispute Credit Reports demonstrated that numerous entities procured Plaintiffs' consumer reports during the period preceding and following their disputes. Moreover, prospective creditors who wished to make a firm offer of credit or insurance to Plaintiffs may have excluded Plaintiff from lists of consumers who received such offers, or else would have factored the inaccurate and confusing information into the terms of any firm offer they decided to extend to Plaintiff. Thus, the inclusion of derogatory information presents an imminent, material risk of harm that Plaintiffs' creditworthiness has been, and continues to be, damaged.

52. Also as a result of Merchants' continued inaccurate and negative reporting, Plaintiffs have suffered actual damages, including without limitation issues regarding credit standing, out-of-pocket expenses in challenging Merchants' inaccurate reporting, lost time, and damage to Plaintiffs' creditworthiness. Plaintiffs' credit reporting issues with Merchants have also caused them to suffer emotional distress in the form of, among other things, fear of credit denials. Plaintiff has also suffered a concrete informational injury by failing to receive the complete and accurate reporting the FCRA entitled Plaintiff to receive.

53. Merchants' conduct at least negligent, but also willful. Plaintiffs are, accordingly, eligible for statutory damages.

54. Plaintiffs have been required to retain counsel to prosecute this action based on this defective investigation and reinvestigation, and is entitled to recover reasonable attorney's fees and costs. *See* 15 U.S.C. §§ 1681n, 1681o.

**EQUIFAX FCRA VIOLATIONS – MR. AND MRS. AARON**
**15 U.S.C. §§ 1681E(B), 1681I, 1681G**

55. Plaintiffs reassert and reallege all of the preceding paragraphs as if fully stated herein.

56. As noted above, Equifax was sent Disputes regarding Plaintiffs' reporting on the Merchants tradelines, but it failed to respond to Plaintiffs at all by providing a timely 1681i written reinvestigations in connection with Plaintiffs' disputes. Consequently, Equifax violated 15 U.S.C. §§ 1681i(a)(2) and 1681(i)(a)(6).

57. Equifax also failed to conduct reasonable reinvestigations in violation of 15 U.S.C. § 1681i(a)(6) because reasonable reinvestigations would have resulted in correction of the errors which Plaintiffs had identified, when Plaintiffs' post-dispute credit reports continued to contain inaccuracies.

58. Equifax's reporting was also objectively unclear and inaccurate to a reasonable consumer like Plaintiffs, because it reported inconsistent bankruptcy and payment history reporting which would have caused an ordinary consumer to wonder how long an account would continue reporting negatively, as well as cast doubt about when Plaintiffs' payment obligations would cease. Accordingly, Equifax violated 15 U.S.C. § 1681g in connection with both the Initial and Post-Dispute Credit Reports.

59. On information and belief, Equifax's policies and procedures were not designed to ensure the maximum accuracy of the credit information it prepared on consumer reports, because

the bankruptcy information and payment history was clearly reported by Merchants to other reporting agencies. These inconsistencies would not have occurred but for the absence of reasonable checks and balances to ensure consistent reporting across tradelines. This violated 15 U.S.C. § 1681e(b).

60. Plaintiffs have suffered concrete and imminent harm to creditworthiness. The Post-Dispute Credit Reports demonstrated that numerous entities procured Plaintiffs' consumer reports during the period preceding and following Plaintiffs' disputes. Moreover, prospective creditors who wished to make a firm offer of credit or insurance to Plaintiffs may have excluded Plaintiffs from lists of consumers who received such offers, or else would have factored the inaccurate and confusing information into the terms of any firm offer they decided to extend to Plaintiff. Thus, the inclusion of derogatory information presents an imminent, material risk of harm that Plaintiffs' creditworthiness has been, and continues to be, damaged.

61. Also as a result of Equifax's continued inaccurate and negative reporting, Plaintiffs have suffered actual damages, including without limitation issues regarding credit standing, out-of-pocket expenses in challenging Equifax's inaccurate reporting, and damage to Plaintiffs' creditworthiness. Plaintiffs' credit reporting issues with Equifax have also caused Plaintiffs to suffer emotional distress in the form of, among other things, fear of credit denials. Plaintiffs have also suffered concrete informational injuries by failing to receive the complete and accurate reporting the FCRA entitled Plaintiffs to receive.

62. Equifax's violations of the FCRA were willful, because Equifax failed to properly respond to multiple disputes, and continued to report inconsistent information; therefore, Plaintiffs are entitled to statutory damages. At minimum, Equifax's violations were negligent.

63. Plaintiffs have been required to retain counsel to prosecute this action based on this defective investigation and reinvestigation, and is entitled to recover reasonable attorney's fees and costs. *See* 15 U.S.C. §§ 1681n, 1681o.

**TRANS UNION FCRA VIOLATIONS – MR. AND MRS. AARON**
**15 U.S.C. §§ 1681E(B), 1681I, 1681G**

64. Plaintiffs reassert and reallege all of the preceding paragraphs as if fully stated herein.

65. As noted above, Trans Union was sent Disputes regarding Plaintiffs' reporting on the Merchants tradelines, but it failed to conduct reasonable reinvestigations in violation of 15 U.S.C. § 1681i(a)(6) because reasonable reinvestigations would have resulted in correction of the errors which Plaintiffs had identified, when Plaintiffs' post-dispute credit reports continued to contain inaccuracies.

66. Trans Union's reporting was also objectively unclear and inaccurate to a reasonable consumer like Plaintiffs, because it reported inconsistent bankruptcy and payment history reporting which would have caused an ordinary consumer to wonder how long an account would continue reporting negatively, as well as cast doubt about when Plaintiffs' payment obligations would cease. Accordingly, Trans Union violated 15 U.S.C. § 1681g in connection with both the Initial and Post-Dispute Credit Reports.

67. On information and belief, Trans Union's policies and procedures were not designed to ensure the maximum accuracy of the credit information it prepared on consumer reports, because the bankruptcy information and payment history was clearly reported by Merchants to other reporting agencies. These inconsistencies would not have occurred but for the absence of reasonable checks and balances to ensure consistent reporting across tradelines. This violated 15 U.S.C. § 1681e(b).

68. Plaintiffs have suffered concrete and imminent harm to creditworthiness. The Post-Dispute Credit Reports demonstrated that numerous entities procured Plaintiffs' consumer reports during the period preceding and following Plaintiffs' disputes. Moreover, prospective creditors who wished to make a firm offer of credit or insurance to Plaintiffs may have excluded Plaintiffs from lists of consumers who received such offers, or else would have factored the inaccurate and confusing information into the terms of any firm offer they decided to extend to Plaintiff. Thus, the inclusion of derogatory information presents an imminent, material risk of harm that Plaintiffs' creditworthiness has been, and continues to be, damaged.

69. Also as a result of Trans Union's continued inaccurate and negative reporting, Plaintiffs have suffered actual damages, including without limitation issues regarding credit standing, out-of-pocket expenses in challenging Trans Union's inaccurate reporting, and damage to Plaintiffs' creditworthiness. Plaintiffs' credit reporting issues with Trans Union have also caused Plaintiffs to suffer emotional distress in the form of, among other things, fear of credit denials. Plaintiffs have also suffered concrete informational injuries by failing to receive the complete and accurate reporting the FCRA entitled Plaintiffs to receive.

70. Trans Union's violations of the FCRA were willful, because Trans Union failed to properly respond to multiple disputes, and continued to report inconsistent information; therefore, Plaintiffs are entitled to statutory damages. At minimum, Trans Union's violations were negligent.

71. Plaintiffs have been required to retain counsel to prosecute this action based on this defective investigation and reinvestigation, and is entitled to recover reasonable attorney's fees and costs. *See* 15 U.S.C. §§ 1681n, 1681o.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION – MR. AARON VS. MERCHANTS
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1682S-2(B)

72. Plaintiffs reallege all paragraphs above as if realleged herein.

73. The above allegations represent numerous violations of the FCRA, 15 U.S.C. § 1681s-2(b).

74. Based on these negligent violations, Mr. Aaron is entitled to actual damages. 15 U.S.C. § 1681o.

75. Based on these willful violations, Mr. Aaron is entitled to statutory damages. 15 U.S.C. § 1681n.

76. Mr. Aaron has been required to retain counsel to prosecute this action based on this defective investigation and reinvestigation, and is entitled to recover reasonable attorney's fees and costs. *See* 15 U.S.C. §§ 1681n, 1681o.

### SECOND CAUSE OF ACTION – MRS. AARON V. MERCHANTS
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1682S-2(B)

77. Plaintiffs reallege all paragraphs above as if realleged herein.

78. The above allegations represent numerous violations of the FCRA, 15 U.S.C. § 1681s-2(b).

79. Based on these negligent violations, Mrs. Aaron is entitled to actual damages. 15 U.S.C. § 1681o.

80. Based on these willful violations, Mrs. Aaron is entitled to statutory damages. 15 U.S.C. § 1681n.

81. Mrs. Aaron has been required to retain counsel to prosecute this action based on this defective investigation and reinvestigation, and is entitled to recover reasonable attorney's fees and costs. *See* 15 U.S.C. §§ 1681n, 1681o.

**THIRD CAUSE OF ACTION – MR. AARON VS. EQUIFAX
VIOLATION OF THE FAIR CREDIT REPORTING ACT,
15 U.S.C. §§ 168IE(B), 1681I, 1681G**

82. Plaintiffs reallege all paragraphs above as if realleged herein.

83. The above allegations represent numerous violations of the FCRA, 15 U.S.C. §§ 1681e(b), 1681i, 1681g.

84. Based on these negligent violations, Mr. Aaron is entitled to actual damages. 15 U.S.C. § 1681o.

85. Based on these willful violations, Mr. Aaron is entitled to statutory damages. 15 U.S.C. § 1681n.

86. Mr. Aaron has been required to retain counsel to prosecute this action based on this defective investigation and reinvestigation, and is entitled to recover reasonable attorney's fees and costs. *See* 15 U.S.C. §§ 1681n, 1681o.

**FOURTH CAUSE OF ACTION – MRS. AARON VS. EQUIFAX
VIOLATION OF THE FAIR CREDIT REPORTING ACT
15 U.S.C. §§ 168IE(B), 1681I, 1681G**

87. Plaintiffs reallege all paragraphs above as if realleged herein.

88. The above allegations represent numerous violations of the FCRA, 15 U.S.C. §§ 1681e(b), 1681i, 1681g.

89. Based on these negligent violations, Mrs. Aaron is entitled to actual damages. 15 U.S.C. § 1681o.

90. Based on these willful violations, Mrs. Aaron is entitled to statutory damages. 15 U.S.C. § 1681n.

91. Mrs. Aaron has been required to retain counsel to prosecute this action based on this defective investigation and reinvestigation, and is entitled to recover reasonable attorney's fees and costs. *See* 15 U.S.C. §§ 1681n, 1681o.

**FIFTH CAUSE OF ACTION – MR. AARON VS. TRANS UNION
VIOLATION OF THE FAIR CREDIT REPORTING ACT
15 U.S.C. §§ 168IE(B), 1681I, 1681G**

92. Plaintiffs reallege all paragraphs above as if realleged herein.

93. The above allegations represent numerous violations of the FCRA, 15 U.S.C. §§ 1681e(b), 1681i.

94. Based on these negligent violations, Mr. Aaron is entitled to actual damages. 15 U.S.C. § 1681o.

95. Based on these willful violations, Mr. Aaron is entitled to statutory damages. 15 U.S.C. § 1681n.

96. Mr. Aaron has been required to retain counsel to prosecute this action based on this defective investigation and reinvestigation, and is entitled to recover reasonable attorney's fees and costs. *See* 15 U.S.C. §§ 1681n, 1681o.

**SIXTH CAUSE OF ACTION – MRS. AARON VS. TRANS UNION
VIOLATION OF THE FAIR CREDIT REPORTING ACT
15 U.S.C. §§ 168IE(B), 1681I, 1681G**

97. Plaintiffs reallege all paragraphs above as if realleged herein.

98. The above allegations represent numerous violations of the FCRA, 15 U.S.C. §§ 1681e(b), 1681i.

99. Based on these negligent violations, Mrs. Aaron is entitled to actual damages. 15 U.S.C. § 1681o.

100. Based on these willful violations, Mrs. Aaron is entitled to statutory damages. 15 U.S.C. § 1681n.

101. Mrs. Aaron has been required to retain counsel to prosecute this action based on this defective investigation and reinvestigation, and is entitled to recover reasonable attorney's fees and costs. *See* 15 U.S.C. §§ 1681n, 1681o.

**PRAYER FOR RELIEF**

Plaintiffs respectfully request the Court grant them the following relief against each Defendant on Counts 1 through 6:

**FIRST THROUGH SIXTH CAUSES OF ACTION
VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681 ET SEQ.**

- an award of actual damages pursuant to 15 U.S.C. § 1681n(a)(1);
- award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);
- an award of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);
- award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) against Huntington for each incident of negligent noncompliance of the FCRA; and
- any other relief the Court may deem just and proper.

//

//

**TRIAL BY JURY**

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiffs are entitled to, and demand, a trial by jury.

Dated: December 8, 2023

                                              Respectfully submitted,

                                              /s/ *Miles N. Clark*
                                              Miles N. Clark, Esq.
                                              LAW OFFICES OF MILES N. CLARK, LLC
                                              5510 S. Fort Apache Rd, Suite 30
                                              Las Vegas, NV 89148-7700

                                              *Attorney for Plaintiffs,*
                                              *Robert Aaron and Marilyn Aaron*